IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> -vs- <br><br> MICHAEL JONATHAN COLLINS, <br><br> Defendant. | **ORDER AND** <br><br> **MEMORANDUM DECISION** <br><br><br> Case No.  2:07-cr-009 TC |

Defendant Michael Jonathan Collins has filed a Motion to Suppress Evidence.  Arguing that he had been unlawfully detained, Mr. Collins seeks the suppression of weapons discovered during a traffic stop.  He also seeks the suppression of statements he made during the allegedly unlawful detention.

But the police did not unlawfully detain Mr. Collins.  He was the passenger in a car which the police lawfully pulled over for running a stop sign.  While one policeman ran background checks on the driver, another questioned Mr. Collins and removed him from the vehicle.  Because the questioning and removal did not extend the traffic stop, they were reasonable under the Fourth Amendment.

The subsequent pat-down search of Mr. Collins was constitutional because there was reasonable suspicion that the police officers may be in danger.  After the search, the officers discovered Mr. Collins had outstanding warrants and placed him under arrest.

Accordingly, there was no unlawful detention and no evidence should be suppressed.  The court DENIES Mr. Collins's motion for the reasons stated more fully below.

**FINDINGS OF FACT**

After seeing a Saab fail to stop at a stop sign just after 2:00 a.m. on November 28, 2006, Salt Lake City Patrol Officer Kevin Ford turned on his police lights to stop the car. (Tr. 6:18-7:2.) The car eventually pulled into a driveway of a nearby residence, which the driver later claimed as her own. (Id. at 7:3-11.) Officer Ford was familiar with the residence because, like other houses in the neighborhood, the residence was well known for drug problems. (Id. at 8:6-15.) And nearby addresses had been involved with gang activity, namely drive-by shootings and drugs. (Id. at 18:2-13.)

When the Saab pulled into the driveway, Officer Ford pulled in about two feet behind, illuminating the Saab with his headlights. (Id. at 9:1-9.) Salt Lake City Police Officer Moe Tafisi stopped his vehicle immediately behind Officer Ford's car. (Id.)

Officer Ford walked to the driver's side of the car to inform the driver—a twenty-seven year old female—that he had pulled her over because she ran a stop sign, and asked for her driver's license and registration. (Id. at 10:7-12, 15:6-8.) At that time, Officer Tafisi observed the lone passenger—later identified as Mr. Collins—make a furtive movement. (Id. at 9:23-10:6, 18:23-19:8.) Specifically, Mr. Collins leaned forward so Officer Tafisi could barely see his head, and appeared to reach below his seat. (Id. at 19:18-22.) Due to similar incidents where policemen have been shot, the motion made Officer Tafisi concerned about his and Officer Ford's safety. (Id. at 19:12-17.)

To get a better view, Officer Tafisi walked to the passenger side of the Saab while Officer Ford returned to his vehicle to run background checks on the driver's information and car registration. (Id. at 10:14-16, 11:10-15, 20:3-5.) Because Mr. Collins looked young, Officer

Tafisi suspected that Mr. Collins was in violation of the local curfew law, which makes it unlawful for minors to be in public places after 1:00 a.m. (Id. at 20:18-26:3.) Officer Ford also believed Mr. Collins looked very young, but focused on verifying the driver's information. (Id. at 15:8-10.)

Because Officer Tafisi thought that Mr. Collins looked familiar, the officer asked if they knew each other. (Id. at 22:11-19.) Mr. Collins answered no, and Officer Tafisi asked for his name. (Id. at 22:18-21.) Mr. Collins responded his name was Michael Collins Jiminez, and Officer Tafisi assumed Collins was his middle name. (Id. at 22:18-21, 23:9-18.) As they were talking, Officer Tafisi noticed that Mr. Collins seemed excessively nervous, which is highly unusual for a passenger in a traffic stop. (Id. at 21:9-14.) Officer Tafisi asked for identification, but Mr. Collins did not provide any. (Id. at 23:19-14.) Then the officer asked Mr. Collins his date of birth, but could not understand the answer. (Id. at 24:7-8.) He asked again and Mr. Collins answered "5/82." (Id. at 24:8-12.) After Officer Tafisi asked a third time, Mr. Collins said his birthdate was "6/5 of '82," which the officer understood to mean June 5, 1982. (Id. at 24:14-18.). Officer Tafisi then asked Mr. Collins his age, and Mr. Collins answered that he was eighteen years old. (Id. at 24:19-22.) Because the date of birth Mr. Collins provided would have made him twenty-four years old, Officer Tafisi was concerned. (Id. at 24:23-25:9.)

Officer Tafisi ran a background check on Michael Collins Jiminez with a date of birth of June 5, 1982, and learned Mr. Collins may be a missing person. (Id. at 23:25-25:3, 25:10-20, 34:6-9.) To confirm his status as a missing person, dispatch asked for a description of Mr. Collins. (Id. at 26:5-13.) Officer Tafisi reported his subject had blue eyes, but dispatch replied that did not match the information in the missing person file. (Id.)

Approximately fifteen minutes after observing the furtive movements, Officer Tafisi asked Mr. Collins to step out of the Saab. (Id. at 27:1-12, 27:25-28:1, 32:12-16.) At the time, Officer Ford was still in his vehicle with the driver's documentation. (Id. at 15:17-20.)

After Mr. Collins was out of the car, Officer Tafisi did a pat-down search and found a fishing license with the name Michael Collins. (Id. at 28:2-5.) Officer Ford ran a background check using that name, which revealed three outstanding warrants for forgery, as well a past concealed weapons charge. (Id. at 13:1-15.) Officer Tafisi arrested Mr. Collins for the felony warrants, but did not read him his rights. (Id. at 28:9-14.)

Given Mr. Collins's weapons history, along with his furtive movements, Officer Tafisi believed Mr. Collins may have concealed a weapon below his seat in the Saab. (Id. at 28:17-19, 28:19-21.) With Mr. Collins in handcuffs, Officer Tafisi searched the area around the passenger seat of the car. (Id. at 28:22-29:2.) Below Mr. Collins's seat, Officer Tafisi found what appeared to be three guns wrapped in a jacket. (Id. at 29:4-9.)

## ANALYSIS

Mr. Collins seeks the suppression of the firearms and his statements,[1] contending that an unlawful detention lead to their discovery. He supports his motion on two grounds: (1) the questioning and removing him from the vehicle exceeded the scope of the initial traffic stop; and

---

[1] Mr. Collins's motion seeks the suppression of the firearms "as well as all statements made to law enforcement following his detention and arrest . . . ." (Def.'s Mot. to Suppress at 2). Because he has only argued that the detention violated his Fourth Amendment protections against unreasonable search and seizure—and he has not asserted any other basis for seeking the suppression of his statements—the court's determination of the lawfulness of the detention will resolve his request to suppress the firearms, as well as his request to suppress his statements. Accordingly, the court considers only whether the detention violated Mr. Collins's Fourth Amendment rights.

(2) the pat-down search was not based on reasonable suspicion.  The court addresses these in turn.[2]

## I.      The Officers Could Question Mr. Collins and Remove Him from the Vehicle

Because Officer Tafisi did not extend the traffic stop, the Fourth Amendment permitted the officer to question Mr. Collins and remove Mr. Collins from the vehicle.

During a valid traffic stop, the police may remove all passengers from the vehicle. Maryland v. Wilson, 519 U.S. 408, 411-13 (1997); United States v. Ladeaux, 454 F.3d 1107, 1110 (10th Cir. 2006) ("As [the back-seat passenger] does not challenge the stop itself, his argument that being ordered out of the car was unlawful must fail.").  The Supreme Court extended a previous ruling that an officer may remove the driver from a validly stopped vehicle, see Pennsylvania v. Mimms, 434 U.S. 106 (1977), and determined that the Fourth Amendment also permits an officer to remove all occupants from the vehicle.  Wilson, 519 U.S. at 415 ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop.").  The passengers may be removed even absent concern for officer safety.  Id. ("It applies equally to traffic stops in which there is not even a scintilla of evidence of any potential risk to the police officer.") (Stevens, J., dissenting).

---

[2]The government concedes that Mr. Collins has standing to challenge his own detention because "a passenger has standing to challenge a constitutionally improper traffic stop, detention, or arrest on Fourth Amendment grounds . . . ." United States v. Eylicio-Montoya, 70 F.3d 1158, 1164 (10th Cir. 1995).

But during oral argument—due to a dispute over whether Mr. Collins has standing to challenge the search of the vehicle—the parties narrowed the issue before the court to whether Mr. Collins was unlawfully detained.  The parties agreed that if Mr. Collins's detention was lawful, his motion should be denied.  Alternatively, should the court find his detention unlawful, the parties would submit additional briefing on whether he has standing to challenge the subsequent search of the vehicle.  Because the court finds Mr. Collins's detention lawful, the question of whether he has standing to challenge the search of the vehicle is moot.

The police may also question the passengers of a stopped vehicle without reasonable suspicion, unless the questioning extends the duration of the stop.  The Tenth Circuit has "explicitly and repeatedly affirm[ed] the right of an officer to question both the driver and her passenger as part of a routine traffic stop." United States v. Jackson, Nos. 06-8072, 06-8073, 2007 WL 1502278, at *2 (10th Cir. May 24, 2007).  Noting that passengers and drivers present similar dangers, the circuit extended to all passengers its previous ruling that police may ask the driver about anything if the questioning does not extend a traffic stop.  United States v. Rice, 483 F.3d 1079, 1084 (10th Cir. 2007) ("[B]ecause passengers present a risk to officer safety equal to the risk presented by the driver, an officer may ask for identification from passengers and run background checks on them as well.") (citations omitted); United States v. Stewart, 473 F.3d 1265, 1269 (10th Cir. 2007) ("[T]he content of police questions during a lawful detention does not implicate the Fourth Amendment as long as those questions do not prolong the detention."); United States v. Wallace, 429 F.3d 969, 974 (10th Cir. 2005) ("As long as the trooper's questioning did not extend the length of the detention, . . . there is no Fourth Amendment issue with respect to the content of the questions.").

Here, during the valid traffic stop, Officer Tafisi questioned Mr. Collins while Officer Ford ran background checks on the driver and on the vehicle.[3]  Officer Tafisi then removed Mr. Collins from the vehicle before Officer Ford had completed the checks and returned the documentation to the driver.

---

[3]Additionally, Officer Tafisi questioned Mr. Collins about his identity, which is permitted as part of a Terry stop.  Hibel v. Sixth Jud. Dist. Court of Nev., 542 U.S. 177, 186 (2004) ("Our decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many Terry stops.").

Consequently, Officer Tafisi did not extend the duration of the traffic stop. The court finds the questioning and removing of Mr. Collins reasonable under the Fourth Amendment.

## II.     Officer Tafisi Had Reasonable Suspicion to Search Mr. Collins

Because there was reasonable suspicion that Officer Ford and Officer Tafisi were in danger, the pat-down search of Mr. Collins was also reasonable under the Fourth Amendment.

Although the police can remove a passenger from the vehicle without any suspicion of criminal activity, the Fourth Amendment requires reasonable suspicion before the police may search any occupants. United States v. Dennison, 410 F.3d 1203, 1211 (10th Cir. 2005) ("A police officer may also 'perform a "patdown" of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous.'") (quoting Knowles v. Iowa, 525 U.S. 113, 118 (1998)).

To determine whether there was reasonable suspicion to justify the pat-down, "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. 1, 27 (1968). "In making the determination, we must examine the totality of the circumstances, meaning that reasonable suspicion may exist even if 'each of the[] factors alone is susceptible of innocent explanation.'" United States v. Cervine, 347 F.3d 865, 871 (10th Cir. 2003) (quoting United States v. Arvizu, 534 U.S. 266, 277 (2002)).

Here, the totality of the circumstances gives rise to a reasonable concern for officer safety. Seven significant objective indicators, as well as Officer Tafisi's subjective fear, support the reasonable belief that the officers may have been in danger. Oliver v. Woods, 209 F.3d 1179, 1188 (10th Cir. 2000) ("[E]ven ambiguous behavior, susceptible to an innocent interpretation,

may give rise to a reasonable suspicion of criminal activity . . . .").

First, the vehicle pulled into a home well known for drug problems in a neighborhood notorious for gang activity. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("[W]e have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a Terry analysis."); United States v. Solo-Cervantes, 138 F.3d 1319, 1323 (10th Cir. 1998) ("While the fact that an individual is in a neighborhood known for drug activity is not sufficient by itself to support a reasonable suspicion that the individual himself is engaged in criminal activity, it can support a finding of reasonable suspicion when combined with other factors.") (citation omitted).

Second, the stop occurred very late at night—just after 2:00 in the morning—fueling the officers' concerns for safety. See United States v. Barbee, 968 F.2d 1026, 1029 (10th Cir. 1992) (considering that vehicle "was traveling in the evening, after dark" as one factor to support reasonable suspicion).

Third, Officer Tafisi observed Mr. Collins make a furtive movement. Knowing policemen had been shot in similar situations, Officer Tafisi reasonably feared for his safety—and that of Officer Ford—when he observed this movement. United States v. Ridley, No. 97-3319, 1998 WL 778381, at *3 (10th Cir. Nov. 2, 1998) ("Although we do not believe a 'furtive' movement, standing alone, supports a Terry search, we think it is a factor to consider when examining reasonable suspicion.").

Fourth, Mr. Collins was extremely nervous. Because Officer Tafisi testified it is peculiar for a passenger in a traffic stop to act excessively nervous, Officer Tafisi's concerns for safety reasonably increased. United States v. Harris, 313 F.3d 1228, 1236 (10th Cir. 2002) ("[W]e may

take into account Defendant's nervous behavior in determining whether [the officer's] protective frisk was justified.").

Fifth, based on his young appearance—which was corroborated by Officer Ford—Officer Tafisi reasonably believed Mr. Collins was a minor out after 1:00 a.m. in violation of local curfew.[4]

Sixth, Mr. Collins gave evasive and contradictory answers to Officer Tafisi's simple questions about his age, and eventually provided a birthdate inconsistent with his stated age. United States v. Martinez, No. 06-1226, 2007 WL 1219420, at *4 (10th Cir. Apr. 26, 2007) ("We have previously held that contradictory answers to an officer's questions can contribute to reasonable suspicion of illegal activity.").

And seventh, based on Mr. Collins's answers during Officer Tafisi's lawful questioning, dispatch informed Officer Tafisi that Mr. Collins was likely a missing person, for which the officer would normally take an individual into custody.

In addition to these objective facts, Officer Tafisi offered credible and reliable testimony that he genuinely feared for his safety. Because courts "'accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions," United States v. Villa-Chaparro, 115 F.3d 797, 801 (10th Cir. 1997) (quoting United

---

[4]Mr. Collins argues that if Officer Tafisi were concerned about curfew, the officer had a duty to ask Mr. Collins for a valid explanation for being out so late. But the ordinance only requires the officer to ask for an explanation before charging Mr. Collins. Salt Lake City, Utah, Ordinances 11.44.070 (2006) ("Prior to charging a person for a violation of this section an officer shall give the person or persons an opportunity to give a reasonable credible account of their conduct and purposes so that the person may show that an exemption in subsection D exists.") (emphasis added). Accordingly, Officer Tafisi could properly investigate Mr. Collins's age without asking for an explanation.

States v. Alvarez, 68 F.3d 1242, 1244 (10th Cir. 1995), cert. denied, 517 U.S. 1143 (1996)), the court finds the officer's fear as an additional factor that there was a reasonable fear of danger.

Considering all of these facts, a reasonably prudent person would have feared for his safety. Accordingly, the pat-down search of Mr. Collins was reasonable under the Fourth Amendment.[5]

The court concludes that Officer Tafisi did not violate Mr. Collins's Fourth Amendment rights when the officer questioned him, removed him from the vehicle, or frisked him. The court DENIES Mr. Collins's Motion to Suppress Evidence.

## CONCLUSION

For the foregoing reasons, Mr. Collins's Motion to Suppress Evidence (dkt. #14) is DENIED.

SO ORDERED this 21st day of June, 2007.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge

---

[5] Mr. Collins challenges only whether Officer Tafisi had a reasonable suspicion to justify the pat-down search. He does not argue that Officer Tafisi exceeded the type of search permitted by Terry when he discovered the fishing license, and the record does not suggest Officer Tafisi exceeded Terry. The court assumes the pat-down search was conducted properly and Officer Tafisi seized the license legally. See Minnesota v. Dickerson, 508 U.S. 366, 373 (1993) ("The question presented today is whether police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by Terry. We think the answer is clearly that they may, so long as the officers' search stays within the bounds marked by Terry.").